## Eyre v. Berry, Appellant.

*Practice, C. P.—Change of venue—Judicial discretion—Laches.*

1. The refusal of the lower court to grant a petition for a change of venue in an action for slander was not an abuse of judicial discretion where the petition was not presented until the day the case was listed for trial; where the answer denied the allegations of the petition; and where there was no evidence to sustain the allegations of the petition, but only affidavits averring that a fair trial could not be had in the county, and not alleging any facts from which the inference could be drawn that a fair trial could not be had.

2. In such case the contention of the petitioner that a rule to show cause should have been granted was without merit, where petitioner did not ask for a rule to show cause; and where on the day that the answer was filed, petitioner submitted himself to the court upon his petition and the affidavits filed in support of it.

Argued Feb. 11, 1918. Appeal, No. 175, Jan. T., 1917, by defendant, from order of C. P. Chester Co., Jan. T., 1917, No. 24, refusing change of venue in case of T. L. Eyre v. William H. Berry. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Petition for change of venue.

From the record it appeared that the petition was presented on the day when the case was listed for trial.

The facts appear in the following opinion of LANDIS, P. J., specially presiding.

It has been said, in Wallace v. Jameson, 179 Pa. 98, that an application for a change of venue on the day of trial is tardily made, and it seems to be intimated by the appellate court that, unless some good reason in excuse of the delay is advanced, such an application usually should be denied on the ground of laches. This question, however, has not been directly passed upon, and the Act of 1875 and its supplements fix no time for filing the petition, but direct that it may be presented to the court in

term time, or to any law judge thereof in vacation, accompanied with an affidavit that it is not intended for delay. On the case, therefore, of the act of assembly, it would seem that such an application can be made at any time before the jury is sworn, leaving the lateness of its presentation to be considered by the court in determining its good faith.

It appears that this suit was brought on November 4, 1916. It was put at issue in January, 1917. After that time, it was upon the trial list, and was continued by the court on the application of the defendant. It can hardly be asserted that no arrangement was made for its trial at this term, for, without this, I would not have been . called to West Chester for that purpose. The application, therefore, comes before me at this late day with no intendment in its favor.

Paragraph 5 of Section 1 of the Act of March 30, 1875, P. L. 35, relating to change of venue in civil cases, provides that "whenever a large number of the inhabitants of the county in which such cause is pending; have an interest in the question involved therein, adverse to the applicant, and it shall appear by the oath of such applicant that he believes he cannot have a fair and impartial trial" (section 2), "the court or judge shall, if satisfied of the truth of the facts alleged, award a change of venue of the said cause to some county where the cause complained of do not exist"; and paragraph 1 of section 3, that, "whenever it shall appear to the satisfaction of the court in which such cause is depending that any party to such cause hath an undue influence . over the minds of the inhabitants of the said county, or that they are prejudiced against the applicant so that a fair and impartial trial cannot be had,......the court shall proceed to hear the parties by counsel, and affidavits if necessary, and may refuse or award such change of venue as in its discretion it shall see fit."

By the Act of March 18, 1909, P. L. 37, the fifth paragraph of Section 1 of the said Act of 1875 was amended,

so as to read: "Whenever a large number of the inhab-. itants of the county in which cause is pending have an interest in the question involved therein, adverse to the applicant, and it shall appear to the court that he cannot have a fair and impartial trial."

It is under these two sections that the defendant makes his present application.

The defendant, in his petition, alleges that he is informed and believes that he cannot have a fair and impartial trial in the County of Chester, because (a) and (b), the plaintiff is a member of the State senate, representing the District of Chester County (the Nineteenth Senatorial District of Pennsylvania), to which office he was elected on the 7th day of November, A. D. 1916, by a vote of 10,209, and having a majority of 456, being more than one-half of the total vote cast in said county for the said office and that he was duly inducted into said office, and is now sitting as a member of the said senate, representing said county, and that, as appears by the declarations filed in the case, the plaintiff was a candidate for election for the office of member of the senate of Pennsylvania at the election held in November 7, 1916, and that the alleged slanderous words were uttered of and concerning him with regard to his fitness to be chosen by the voters at the said election for the said office, and that, by reason of the large number of inhabitants, casting their ballots at said election for the said plaintiff, a local prejudice exists to such an extent that the defendant cannot have a fair and impartial trial in said county; (c) because the plaintiff has an undue influence over the minds of the inhabitants of the said County of Chester, so that a fair and impartial trial cannot be had, in that he was, on the day above mentioned, elected as senator on the Republican party ticket, and he is now, and has been for many years past, the recognized leader of the Republican party of said county, and that the election returns for the said county and senatorial district for many years past generally show

that the voters of the Republican party have numbered a large majority.

In an answer filed by the plaintiff, most of the material facts are specifically denied. No witnesses were produced and no depositions were taken in court to sustain the petition, and no opportunity for cross-examination was ever afforded. The defendant, however, was supported by six affidavits, made by citizens of Chester County, in which the facts set forth in the petition were recited in the same words, and it is upon the petition and these affidavits that the defendant rests his case. Not a single specific act or word by any one, which would reasonably give rise to the opinion that a fair trial could not be had in Chester County, appears; and the allegations in the petition and affidavits are based solely upon the mental conclusions of the parties that, because the plaintiff is and has been prominent in Republican politics in the county and because he received a majority of the votes cast at the election held shortly after the alleged slanderous words were uttered, the inferences asserted naturally arise. It is not claimed by the defendant that a single juror summoned to attend this court has been in any way influenced by the plaintiff's candidacy or his position.

It is conceded that the plaintiff was a candidate for State senator from the Nineteenth Senatorial District at the general election held on November 7, 1916. On November 1, 1916, Mr. Berry came into the County of Chester to oppose his election, and, at a public meeting, uttered the alleged untrue and slanderous words contained in the plaintiff's statement. There is no evidence that these charges were the main issue before the voters of the district at that election, and, presumably, they were not, as they were made only six days before the election actually took place. But, be that as it may, it is admitted that, at the election, Mr. Eyre received 10,-209 votes, and his opponent 9,753 votes, and that Mr. Eyre, therefore, was elected. The small majority of

456 which the plaintiff received would seem to indicate that neither his leadership nor the large normal Republican vote of the county entered potentially into the contest. How many of the citizens of the district did not vote for any candidate has not been shown, and it is likely that, with many who did not vote at the election at all, the vote received by the plaintiff was in fact a minority of the total vote of the county.

In Presbyterian Church v. Philadelphia, Bristol & Trenton Street Railway Company, 217 Pa. 399, it is said: "What is a large number of inhabitants is a relative question depending on the circumstances. A few hundred might be a large number in some communities, while as many thousand might not be in others. So in regard to the interest which is averred to be adverse to the petitioner in the application. Its intensity, its particular or general character, its diffusion throughout the county or confinement to one or more localities, are all elements bearing on its reaching the requirements of the statute. All of them, both as to number and interest, are addressed to the judicial discretion of the judge": See also, Everson v. Sun Company, 215 Pa. 231.

In 40 Cyc. 135, it is said that "the prejudice must ordinarily be directed against a party personally, and not merely against the cause of action, and it is not sufficient merely that the case has been widely discussed or given extensive publication in the newspapers, or that there is a general interest in the suit or subject-matter thereof, unless such interest is adverse to the applicant, or of such a character as would tend to prevent an impartial trial, nor is it sufficient that there is a prevailing sentiment against a party's politics or religion." See, also, Burns v. Penna. R. R. Co., 222 Pa. 406.

Now, Mr. Berry, with a confidence in the independence of Chester County's voters, came into the county to submit for their determination the charges against the plaintiff, which he claimed to be able to substantiate. It would seem, from his petition, that either his or other

arguments were effective; for, if it be true, that the voters of the county are largely Republican in politics, then it follows that the vote received by the opponent of Mr. Eyre must have come, to a large extent, from those who are generally of that persuasion. Of course, he may say that he has since changed his mind in this respect; but has the real situation been altered, except that now a smaller and more select tribunal, taken from the same electorate, has been called upon to pass on the truth or good faith of his conduct in making the charges? He seemingly then had confidence in the plaintiff's constituency, and what good reason has arisen to change his opinion and to cause him to doubt the fairness of these same citizens, has not been satisfactorily explained to me. How the gentlemen in the jury panel voted, or to what political party they usually belong, is now of no importance, nor can such matters at this time be inquired into. It may be that, for various reasons entirely outside of Mr. Berry's charges, some of them voted for and some against the plaintiff; but, even if this be so, ought the court on pure suspicion, find that, because of the election and the plaintiff's standing, there is a likelihood that some of those called into the jury box will, contrary to their oaths, be unduly influenced in a case wherein it plainly appears that they have no personal interest, and at best only a general political concern?

Chester County is well known to be one of the most independent counties, so far as its political predilections are concerned, in the State, and I can see no good reasons for transferring the case to another jurisdiction, where the same prejudices and bias are just as likely to arise. Besides all this, the defendant has full protection under the law in his right to challenge jurors peremptorily and upon legal cause shown.

I do not, however, see how Mr. Berry can be prejudiced by the refusal of his application. If the statements made by him are true, he is in no jeopardy, for, under such circumstances, it will be the duty of the court

to direct a verdict in his favor. If he fails to prove their truth, but shows by facts not to be disputed, that they were made on a proper occasion, from a proper motive, in a proper manner, and based on reasonable and probable cause, it will be the duty of the court to so instruct the jury. Or, if the latter facts depend upon the evidence, the court must say to the jury that, if they so find, a verdict shall have to be rendered in his favor. Only if he made untrue charges recklessly or with actual malice, without good faith, or in an improper manner, will he become liable; for the occasion was privileged, and he is entitled to rest on that privilege, unless, in some way or other, he had forfeited the right. I see no reason whatsoever, under the circumstances, why a jury from the county in which the statements were made should not pass upon these questions of fact, if they arise, with the same impartial fairness that they would be passed upon in any other jurisdiction.

Then, in addition, also, the plaintiff has rights as well as the defendant, and the circumstances do not appear to me to warrant trouble which will necessarily follow, if a change of venue is allowed. Then, too, Mr. Berry has also been a candidate before the people, and has served in high public office in the State. He may perhaps be better known in the adjoining counties, to one of which the case would be transferred, than the plaintiff, and it can, therefore, be equally urged as against him that he might thus obtain an unfair advantage. Taking all the facts, therefore, into consideration, it seems to me that the fairest way is to let the parties fight out their contest exactly where it arose.

Of course, it is important, in the administration of justice, that a fair trial be given to all litigants; but it is equally important that applications of this character, with little basis to rest upon and used chiefly for the purpose of delay, should not be permitted to interfere with the ordinary course of jury trials.

For these reasons, I am of the opinion that the venue

1918.]    Opinion of Court below—Opinion of the Court.

should not be changed as prayed for in the petition, and that the petition should be dismissed at the costs of the applicant, and this order is accordingly now entered.

It has been suggested that the decision of the court refusing a change of venue is interlocutory, and, therefore, not the subject of an appeal at this time, and this contention may be correct; but it must be admitted that there are reported cases in which decisions of the court below to this effect have been reversed for that sole cause. It would be a waste of time to try such an issue before a jury, if it should be sent back for a retrial on this account. If such should be the result, the apparent delay attending a present continuance would undoubtedly prove more fanciful than real. Then, too, in the recent case of Pennsylvania Railroad Company v. City of Reading, 254 Pa. 110, an appeal was taken direct from the decision of the court below refusing the change of venue, and, on appeal, it was heard on that question alone before the Supreme Court, and the judgment was affirmed. It is true that there the point, whether the action of the court was interlocutory or final, was not raised. Therefore, under the present situation of the decided cases, I have deemed it best to have the preliminary question, if possible, decided before the main issue is entered upon.

The court dismissed the petition.

The defendant appealed.

*Error assigned* was in refusing a change of venue.

*D. P. Hibberd* and *James Scarlet,* with them *John Haviland, Jr.,* for appellant.

*A. M. Holding,* with him *Robert S. Gawthrop* and *James Gay Gordon,* for appellee.

PER CURIAM, March 11, 1918:

It has not been shown that the learned judge, specially presiding below, abused his discretion in dismissing the

appellant's petition for a change of venue, and this appeal cannot, therefore, be sustained: Everson v. Sun Company, 215 Pa. 231; Pittsburgh & Allegheny Bridge Company v. Allegheny County, 239 Pa. 67. As to the contention of the appellant that a rule to show cause ought to have been granted, it need only be said that his petition did not ask for it, and on the day the answer of the plaintiff was filed the defendant submitted himself to the court on his petition and the affidavits filed in support of it.

Appeal dismissed at appellant's costs.